MERANZE AND KATZ, P.C.
BY:  Michael N. Katz, Esquire      (ID# 27857)
      Claiborne S. Newlin, Esquire (ID# 84371)
Lewis Tower Building, 12th Floor
225 S. 15th Street
Philadelphia, PA 19102
Tel.: (215) 546-4183
Fax: (215) 790-1382

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL 1 OF PA/DE et al. : | CIVIL ACTION |
| Plaintiffs, : | NO. 02CV-4079 |
| v. : | |
| MASTRO MASONRY CONTRACTORS et al. : | |
| Defendants : | |

**FINDING OF FACTS AND CONCLUSIONS OF LAW**

Plaintiffs, Bricklayers and Allied Craftworkers Local 1 of PA/DE, Bricklayers and Allied Craftworkers Local 1 of PA/DE Health and Welfare Fund, Bricklayers and Allied Craftworkers Local 1 of PA/DE Joint Apprenticeship and Training Fund, Tile Layers Local 6 Annuity Fund, TMT Tile Finishers Local 32 Annuity Fund, Tile Layers Local 6 Vacation Fund and TMT Tile Finishers Local 32 Vacation Fund file Plaintiff's Findings of Fact Conclusions Of Law in accordance with the Court's Non-Jury Trial Attachment Order of September 30, 2003 as amended in the Court's Order of October 8, 2003.[1]

FINDINGS OF FACT:

1.  Bricklayers and Allied Craftworkers Local 1 of PA/DE (Local 1) is an unincorporated association and labor organization representing employees engaged in masonry construction in the greater Philadelphia area.

---

[1] The above Findings of Fact and Conclusion of Law have been referred to Thomas M. Guinan, counsel for Defendants Ernest Bock and Sons, Inc. and XL Specialty Insurance Company for review. Because neither are parties to this default action, Bock and XL Specialty take no position on the Findings or Conclusions.

2. The Employing Bricklayers Association of Delaware Valley (Bricklayers Association) is an association of masonry contractors engaged in masonry construction in the greater Philadelphia area.

3. Mastro Masonry Contractors (Mastro) was a masonry contractor engaged in masonry construction in the Philadelphia area.

4. The Bricklayers Association and Local 1 were parties to a Collective Bargaining Agreement (CBA) covering the period May 1, 2000 through April 30, 2003.

5. The Bricklayers Association is made up of assenting employers engaged in the performance of masonry work in the building construction industry.

6. The CBA requires assenting employers to make monthly contributions at set hourly rates to specified health and welfare plans, a local pension plan, an annuity plan and an international pension plan (benefit funds) for all hours worked by their covered employees during the previous month.

7. The CBA also requires assenting employers to deduct from the wages of covered employees voluntary dues and political action committee deductions (dues) and to transmit the deducted amounts to Local 1 on a monthly basis.

8. The wage rates to be paid covered employees and the rates for benefit fund contributions and dues deductions are set annually in Schedule "A," attached to and made part of the CBA

9. At all material times, Joseph Russo acted as owner, President and CEO of Mastro Masonry Contractors (Mastro).

10. On August 9, 2001, Joseph Russo signed a letter of assent to the CBA on behalf of Mastro, making Mastro a party to the CBA.

11. The CBA also incorporated by reference the Agreements and Declarations of Trust for the respective benefit funds.

12. The Agreement and Declaration of Trust defines the "Trust Fund" to include "all contributions paid or due to the Welfare Fund for work performed on or after May 1, 1997, pursuant to the collective bargaining agreements" between Local 1 and any employer.

13. The Agreements and Declarations of Trust empower the Trustees of the benefit plan to establish a delinquency collection policy to ensure prompt collection of delinquent contributions and to assess interest, liquidated damages and penalties for late contributions.

14. The delinquency collection policy applicable to the instant case requires that, in addition to paying all delinquent contributions due, a delinquent employer pay interest at 12% per annum on all contributions received after the due date, pay liquidated damages of 10% on all delinquent contributions and pay all attorney's fees and costs incurred in the collection of any delinquency.

15. During the period August 2001 through March 2002, Mastro performed work covered by the CBA for which it was required to make contributions to the benefit funds and deduct dues.

16. Mastro paid required contributions and dues for the period August 2001 through January 2002 for some of the jobs covered by the CBA.

17. For those jobs on which it paid contributions and dues, Mastro filed contribution reports with its payment certifying that it was reporting all hours covered by the collective bargaining agreement and that it was not reporting hours for any employees not covered by the CBA.

18. Mastro frequently filed reports and made payments beyond the due dates.

19. As a result of late payments, Mastro accumulated liquidated damages and interest charges totaling $3,024.86 for those reports filed August 2001 through January 2002.

20. During the period August 2001 through March 2002, Mastro performed masonry work as a subcontractor to Ernest Bock and Sons, Inc. on the construction of the 24th and 25th District Philadelphia Police Station.

3

21.     Because the police station was a public work, Mastro was required, in accordance with the Pennsylvania Prevailing Wage Act, to file weekly certified-payroll reports listing the names of all employees, the wages and benefits paid to those employees and any deductions made from their pay.

22.     Mastro filed weekly certified-payroll reports for weeks ending December 9, 2001 through March 24, 2002.

23.     In the December through March certified payroll reports, Mastro reported having paid benefits for its employees at the applicable rates but did not turn over benefit contributions to the appropriate Local 1 benefit funds.

24.     Mastro also reported deducting union dues from employees but did not turn over the deducted amounts to Local 1.

25.     Based on Mastro's reports, Plaintiffs claim entitlement to benefit contributions and dues deductions for all employees listed as performing masonry work on the reports.

26.     Plaintiffs also claim the right to benefit contributions and dues deductions for an additional six Mastro employees known to Plaintiffs to be members of Local 1 and entitled to benefits.

27.     For the period December 2001 through March 2002, Mastro failed to pay $109,321.32 in benefit contributions to the Local 1 benefit funds.

28.     Interest on the unpaid benefit contributions at the rate set in the fund's delinquency policy of 12% annually amounts to $6,947.16 as of September 1, 2002.

29.     Liquidated damages on the unpaid benefit contributions at the rate set in the funds delinquency policy of a flat 10% on unpaid contributions amounts to $10,932.13.

30.     Under the terms of the CBA, Mastro owes $127,200.61 to the benefit funds for the period of December 2001 through March 2002.

31.     During the period of December 2001 through March 2002, Joseph Russo, in his capacity as President of Mastro, acted with authority and control over the moneys due the Plaintiff benefit funds.

32.    Mastro deducted union dues from the paychecks of its employees but failed to turn over amounts totaling $12,534.51 to Local 1.

33.    Instead of turning over the deducted monies to Local 1, Russo used those moneys to pay corporate creditors.

34.    Interest at 12% annually on unpaid dues amounts to $794.51 as of September 1, 2002.

35.    Under the terms of the CBA, Mastro owes $13,329.02 in dues and interest to Local 1.

36.    Plaintiffs have expended in $2,775.00 in legal fees in collection of the delinquent contributions and dues.

37.    Plaintiffs have expended $225.00 in costs for filing and service of their complaint.

CONCLUSIONS OF LAW:

38.    Local 1 is a labor organization with the meaning of Section 2(5) of the National Labor Relations Act, 29 U.S.C. §152(5), and Section 301(a) of the Labor-Management Relations Act (LMRA). 29 U.S.C. §185(a).

39.    Plaintiff Bricklayers and Allied Craftworkers Local 1 of PA/DE Health & Welfare Fund is an employee welfare plan within the meaning of Section 2(1) and (3) of ERISA, 29 U.S.C. §1002(1) and (3), and Section 2(37) of ERISA. 29 U.S.C. §1002(37).

40.    Plaintiff Bricklayers and Allied Craftworkers Local 1 of PA/DE Joint Apprenticeship and Training Fund is an employee welfare plan within the meaning of Section 2(1) and (3) of ERISA, 29 U.S.C. §1002(1) and (3), and Section 2(37) of ERISA. 29 U.S.C. §1002(37).

41.    Plaintiff Tile Layers Local 6 Annuity Fund is an employee pension benefit plan within the meaning of Section 2(2) and (3) of ERISA, 29 U.S.C. §1002(2) and (3), and Section 2(37) of ERISA. 29 U.S.C. §1002(37).

42. Plaintiff TMT Tile Finishers Local 32 Annuity Fund is an employee pension benefit plan within the meaning of Section 2(2) and (3) of ERISA, 29 U.S.C. §1002(2) and (3), and Section 2(37) of ERISA. 29 U.S.C. §1002(37).

43. Tile Layers Local 6 Vacation Fund is an employee welfare plan within the meaning of Section 2(1) and (3) of ERISA, 29 U.S.C. §1002(1) and (3), and Section 2(37) of ERISA. 29 U.S.C. §1002(37).

44. TMT Tile Finishers Local 32 Vacation Fund is an employee welfare plan within the meaning of Section 2(1) and (3) of ERISA, 29 U.S.C. §1002(1) and (3), and Section 2(37) of ERISA. 29 U.S.C. §1002(37).

45. Mastro is an employer within with the meaning of Section 2(2) of the National Labor Relations Act, 29 U.S.C. §152(2) and Section 301(a) of the Labor-Management Relations Act. 29 U.S.C. §185(a).

46. Mastro Masonry Contractors is also an employer within the meaning of Section 2(5) of ERISA, 29 U.S.C. §1002(5), and within the meaning of Section 515 of ERISA. 29 U.S.C. §1145.

47. The Court has jurisdiction of this action under Section 301(c) of the LMRA, 29 U.S.C. §185(c), Section 502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3), and United States Code Sections 1331 and 1337, 28 U.S.C. §§ 1331 & 1337, providing for original jurisdiction in the district courts of the United States in civil actions that arise out of Acts of Congress regulating commerce.

48. The Court has jurisdiction over Plaintiffs' state law claims under Section 1367 of the U.S. Code. 28 U.S.C. §1367(a).

49. The amounts unpaid and due the benefit funds for the period December 2001 through December 2002 as reflected on the certified payroll reports are "unpaid contributions" under Section 502 of ERISA. 29 U.S.C. § 1132.

50. The CBA between Local 1 and Mastro is enforceable contract under Section 301 of the Labor Management Relations Act. 29 U.S.C. §185.

51.     On its face, the CBA covers all Local 1 members and all workers performing masonry work employed by Mastro.

52.     The CBA obligates Mastro to make contributions and dues deductions for all employees covered by the CBA.

53.     Mastro has the burden of showing that the six employees, known to be Local 1 members but not reported as performing masonry work, were not entitled to benefits and that Mastro is consequently not obligated to make contributions on their behalf. *See*, *Agathos v. Starlite Motel*, 977 F.2d 1500, 1507-08 (3rd Cir. 1992).

54.     Under ERISA, Mastro is liable to the funds for all unpaid contributions, interest and liquidated damages and reasonable attorney's fees and costs as stated in the fund collection policy. 29 U.S.C. § 1132(g).

55.     Mastro is liable to the funds for interest and liquidated damages and applicable costs and attorney's fees for amounts paid during the period of August 2001 through January 2002 on the basis of the collective bargaining agreement.

56.     Mastro is liable to Local 1 for dues deducted but not turned over on the basis of the parties' collective bargaining agreement.

57.     Since the applicable Agreement and Declaration of Trust declares that the fund is comprised of "all contributions paid <u>or due</u> … for work performed on or after May 1, 1997" (emphasis added) under the CBA, Mastro's unpaid contributions for the period December 2001 through March 2003 are plan assets within the meaning of Section 2(21)(A)(i) of ERISA. 29 U.S.C. 1002(21)(A)(i). *See*, *Trustees of the National Elevator Industry Pension v. Lutyk*, 140 F. Supp. 2d 477, 456 (E.D. Pa. 2001).

58.     By virtue of exercising authority and control over the unpaid contributions, Joseph Russo was a fiduciary of the Plaintiff funds and is therefore personally liable for the delinquent contributions under Section 409 of ERISA. 29 U.S.C. § 1109(a).

59. Since he took dues deducted from his employees and used them to pay corporate obligations, Joseph Russo committed the tort of conversion and is therefore personally liable to Local 1 for all dues deducted from the paychecks of Mastro employees. *See*, *Lopresti v. Terwilliger*, 126 F.3d 34, 41-42 (2nd Cir. 1997) (corporate president is personally liable for conversion committed by using withheld union dues to pay corporation's creditors rather than forwarding those monies to union as required by the collective bargaining agreement)

        Respectfully submitted,

        MERANZE AND KATZ, P.C.


October 14, 2003        BY:   MICHAEL N. KATZ
        CLAIBORNE S. NEWLIN